[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
JOSEPH VISONE, ESQ., ATTORNEY FOR THE PETITIONER.
CT Page 14361 DAVID KUTZNER, ESQ. CHEF STATE'S ATTORNEY OFFICE, ATTORNEY FOR THE STATE.
DORICE G. FARRELL, COURT MONITOR
 and assuming it's — it captures my words, sign it, and then put that into file, and that will be my Memorandum of Decision.
THE COURT: The Court has heard the evidence in this case. The evidence consists of the testimony of the Petitioner, Eugene Coleman, and his trial attorney, Donald Freeman, and four documents re exhibits submitted by the parties. The Court finds after reviewing the evidence and considering the testimony of the witnesses that the Plaintiff has not sustained his burden on the — on his cause of action in his Amended Petition for Habeas Corpus, and determines that the Writ of Habeas Corpus must be denied.
Let me briefly state my reasons for this conclusion. This is a claim of ineffective assistance of counsel involving the trial attorney in a sexual assault case. It was a sexual assault case that went to trial, resulted in a verdict of guilty as charged and has been affirmed on the record by our Appellate Court in State vs. Coleman, 52 Conn. App. 466 Cir denied 249 Conn. 902, a 1999 case.
The allegation of Mr. Freeman's asserted ineffectiveness essentially involved two different factual assertions: one, if I may read from the Amended Petition, is that the Defendant's trial attorney was ineffective in advising his client not to testify, based on the attorney's belief that the prosecution could have introduced prior alleged sexual misconduct of the Defendant, to show the Defendant's Modus Operaridi, where investigation of that conduct would have shown that the evidence of the misconduct was insufficient and therefore would have been inadmissible at the Defendant's trial; the second allegation of inefficiency, and I will also read now from the Amended Petition, is that the Defendant's trial attorney was ineffective for failing to investigate the authenticity of the note given to the Defendant by the victim after the sexual encounter, containing the victim's home phone number, written by the victim, where if such note was authentic, it could have been used at trial to further erode the CT Page 14362 victim's credibility.
Let me take these assertions one at a time. First, with respect to Attorney Freeman's counseling his client not to testify: The Court cannot find that Attorney Freeman counseled his client not to testify because of alleged sexual misconduct of the Defendant that would be used to show the Defendant's Modus Operandi. Rather, Attorney Freeman's concern, and his understandable concern, was that the evidence would have been used for impeachment purposes if his client opens the door. This is — the Court finds this is a legitimate concern, and the Court finds Attorney Freeman's testimony credible that Mr. Freeman discussed this matter with Mr. Coleman prior to, and especially during, trial.
The Court does not find in any way persuasive any allegation by Mr. Coleman that this was not discussed with him. The Court's finding in this regard is bolstered by the fact that Mr. Coleman was canvassed by the trial Court, Judge Spada, not once, but twice, on this matter, and if I may refer to Volume V of the trial transcript, which is an exhibit in this case, Exhibit One, on page 20, the Court asked "Have you reviewed this matter, Mr. Coleman — give me a yes or no — with Mr. Freeman?" The Defendant: "Yes, Your Honor." And then the Court asks "Are you satisfied with the advice given to you by Mr. Freeman relative to you not testifying?" The Defendant: "Yes, Your Honor."
Judge Spada did not leave it at that. But, later that morning, Mr. Freeman reported to the Court on the record that he had discussed the question of Mr. Coleman's testimony again with his client — I'm looking at page 32. "And we did not change our earlier position." And then the Court says the following: "If you wanted to reconsider, Mr. Coleman, you've been an ear witness to these exchanges. I just want to place on the record that you're in agreement with your attorney's representation to the Court that both of you decided that it would be in your best interest not to testify." The Defendant: "Yes."
It is clear that Mr. Coleman was fully and thoroughly canvassed on this subject, and the Court finds that Mr. Freeman was not in any way remiss in advising you not to testify. The Court will add that, contrary to Mr. Coleman's argument before me, that the Court does not find that Mr. Coleman would have made a convincing witness had he given his — the testimony — at trial, the testimony he would have given before me and that he would CT Page 14363 have had a great deal to fear from cross examination. The inconsistencies in Mr. Coleman's testimony are manifold and the Court notes that on page 80 of the Volume III of the trial transcript, Mr. Freeman stipulated, in the presence of his client, that the sexual assault took place in the bathroom, and, for the record, I don't believe the Habeas testimony has shown this, but there was ample evidence in the trial record that the bathroom in this case, in the West Indian Social Club, was a fairly disgusting place, with urine on the floor and the plausibility of Mr. Coleman's story under these circumstances is most questionable, and the Court feels that if Mr. Coleman had taken the stand, that his testimony would not necessarily have been convincing at all.
Be that as it may, the Court must find on the basis of the evidence before it that Mr. Coleman has not sustained his burden of proof with respect to his allegation that Mr. Freeman was, in any way, remiss in counseling him not to take the stand.
The second matter is that of the note. The allegation is that the Defendant's trial attorney was ineffective for failing to investigate the authenticity of the note. There's been much testimony about this. Suffice it to say that no actual note has been submitted to the Court. The Court has been invited to speculate on what would have happened had the note been investigated, but the Court can do no more than speculate because it doesn't have any hard evidence on where that matter would have gone.
Respondent's Counsel has rightly pointed out that under these circumstances, Mr. Coleman cannot possibly meet the prejudice prong of the Strickland versus Washington test because there's simply no evidence that can persuade the Court that the jury's verdict would have been in any way different had an investigation of the note been done. Of course, if there was evidence that an investigation of the note had turned up certain particular results, then we might have a different story, bit I don't have that and I can only speculate, and I decline to do so.
Let me say, however, on the ineffectiveness prong of Strickland versus Washington, that I cannot believe that I have the necessary evidence to find that Mr. Freeman was ineffective either on this matter. There has been no evidence presented on the standard of care, among experience defense attorneys, with respect to documents of this description. We do know, from his CT Page 14364 own plausible and credible testimony, that Mr. Freeman is, himself, an experience criminal attorney, and that Mr. Freeman declined to investigate the note, and that is the only evidence we have in the case as to what an experienced criminal attorney would have done, but I hasten to add that even if there was a mountain of evidence, which there is not, that an experienced criminal attorney would have investigated the noted, We have nothing to show as to what such an investigation would have turned up, and therefore, the prejudice prong of the Strickland versus Washington test can not be met, either.
For all these reasons, Mr. Coleman has failed to sustain his burden of proof. The Court cannot find that Mr. Freeman was ineffective in any way in his representation of Mr. Coleman, and from all that appears from the record, Mr. Freeman, who is a very experienced attorney, in fact, did a careful and astute job.
Therefore, the Petition for Habeas Corpus must be denied, and when the transcript of my Judgment is submitted to me, I will sign it and put that in the record as my formal Memorandum of Decision.
THE COURT: Yes, ma'am?
 CLERK: Before we go, may the record show that Petitioner Eugene Coleman has been given two forms. One if a Notice of Appeals procedures Habeas Corpus, and the second is an Application for Waiver, Fees, Costs, and Expenses, and Appointment of Counsel on —
MR. VISONE: Thank you.
THE COURT: So noted.
MR. VISONE: I will explain this.
 THE COURT: Thank you. Are there any other matters that the Court must address at this time?
MR. COLEMAN: I'd like just to say something, Your Honor.
 MR. VISONE: — wants to address the Court and I don't know what Your Honor's position would be on that.
 THE COURT: Sir, what I'm going to do is you've had a CT Page 14365 chance to address me in — in your testimony and I've given my judgment and, as your attorney can explain to you, there are certain procedures that can be followed if you don't agree with my judgment and I think that the appropriate legal course is to leave it at that.
 Madame Clerk, I'm going to ask you if you'd be kind enough to pass me the yellow stickers. — And then, we'll stand in recess.
SHERIFF: All rise.
(Whereupon the Court stands in recess.)
 * * * *
THE HONORABLE JON C. BLUE, JUDGE
 CERTIFICATION
FARRELL, COURT MONITOR.
This is to certify that the foregoing is a true and accurate transcript of the above-entitled matter, electronically recorded by me, heard in the Superior Court, Judicial District of New Haven, Connecticut, before the Honorable JON C. BLUE, Judge.
Dated at New Haven, Connecticut, this 14th day of December, 1999.
DORICE G. FARRELL COURT MONITOR